**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| YVONNE MAGEE and JOHNELLA FINERAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 3:09-CV-337 |
| SOUTH BEND HOUSING AUTHORITY, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## BRIEF IN SUPPORT OF THE HOUSING AUTHORITY'S, MARVA LEONARD-DENT'S AND THE COMMISSIONERS' MOTION TO DISMISS

Defendants The Housing Authority of South Bend, Marva J. Leonard-Dent, Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad ("Defendants")[1] hereby move to dismiss the Complaint filed by Plaintiffs Yvonne Magee and Johnella Finneran[2] for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' claims against the Commissioners and Ms. Leonard-Dent are redundant of claims against the Housing Authority, and the "Board of Commissioners" is not an entity subject to suit. Moreover, Plaintiffs' segregation claims fail because they lack standing to bring them and because those claims are untimely. Further, Plaintiffs' thirteen claims against Defendants are not properly pled under standards adopted by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed,

---

[1] Plaintiffs have also named South Bend Mayor Stephen Luecke and Shaun Donovan, the Secretary of the Department of Housing and Urban Development (HUD). This Brief refers to "Defendants" for simplicity and should not be construed to include Mayor Luecke or Secretary Donovan.

[2] Defendants believe Ms. Finneran's name is misspelled in the Complaint as "Fineran" and is properly spelled "Finneran".

Plaintiffs' Complaint neither gives Defendants fair notice of the basis of their claims nor pleads sufficient facts to demonstrate an entitlement to relief.  For these reasons, which are more thoroughly explained below, and the others set forth in this Brief, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

**PLAINTIFFS' ALLEGATIONS**

## I.    Parties

Plaintiff Magee is a tenant of 628 Western Avenue, a public housing development owned by the Housing Authority.[3]  (Pls' Compl. ¶ 3(a).)  Plaintiff Finneran does not claim to be a tenant of a property owned by the Housing Authority.  Both Plaintiffs allege that they are African American, female, and individuals with a disability or handicap.  (Pls' Compl. ¶ 3(a) and 3(b).)  Ms. Finneran is the mother of Ms. Magee.  (Pls' Compl. ¶ 3(b).)

Plaintiffs allege the Housing Authority is "a municipal corporate body, or part of the civil city of South Bend municipal corporate body, which owns and manages public housing projects funded by the United States Department of Housing and Urban Development (HUD), a federal executive department and agency."  (Pls' Compl. ¶ 4.)  Plaintiffs allege Defendant Marva Leonard-Dent is the Executive Director of the Housing Authority and "has responsibility for the management, direction, and oversight of HASB activities, services, and properties."  (Pls' Compl. ¶ 5.)  Plaintiffs allege that Defendant Board of Commissioners is "the corporate board exercising control over HASB and appoints and supervises the HASB Executive Director."  (Pls' Compl. ¶ 6.)  Plaintiffs claim the Housing Authority and the Board of Commissioners are "'persons' within the meaning of 42 U.S.C. 1983."  (Pls' Compl. ¶ 10.)  Plaintiffs identify

---

[3] Ms. Magee passed away in August 2009.  Her counsel has indicated that a personal representative for Plaintiff Magee will pursue her claims in this case, but to date, the Complaint has not been amended to reflect this.

Defendants Harvey-Tate, Hairston, Morton, Toothaker, and Muhammad as "members of the HASB Board of Commissioners." (Pls' Compl. ¶ 7.)

## II.    Facts

Plaintiffs' Complaint includes three sets of allegations. First, Plaintiff Magee makes allegations regarding the condition of her apartment and services at the Housing Authority, her complaints about those issues, and the Housing Authority's response. Specifically, Plaintiff Magee claims the condition of her apartment and building fail to "meet standards of habitability and peaceable enjoyment established by state and municipal law and incorporate into HUD requirements or established separately by HUD requirements." (Pls' Compl. ¶¶ 12, 13.) Ms. Magee claims she complained about those problems as well as "services at the Housing Authority property," but Housing Authority staff members retaliated against her for complaining about these issues "by failing to take remedial action … and by the manner in which HASB staff members treated Ms. Magee." (Pls' Compl. ¶¶ 14-16.) Ms. Finneran is not included in any of these allegations.

Plaintiffs' second general allegation is that "HASB staff members have retaliated against Ms. Magee and against Ms. Fineran because of her association with Ms. Magee. This retaliation has taken the form of refusal to provide services to Ms. Fineran in connection with an application for Section 8 vouchers jointly by Ms. Magee and Ms. Fineran." (Pls' Compl. ¶ 17.) Similarly, Ms. Magee claims she has been retaliated against "in the action of Defendants on the application for Section 8 voucher." (Pls' Compl. ¶ 17.) Plaintiffs do not allege they have been denied the Section 8 voucher, but instead state "[t]here is a dispute between Plaintiffs and Defendants on the question of Plaintiffs' eligibility for vouchers as evidenced by conflicting statements made by HASB staff members to Plaintiffs concerning their right to receive vouchers." (Pls' Compl. ¶ 17.)

Plaintiffs' final allegation is again unrelated to Ms. Finneran, but alleges that the building, complex and neighborhood in which Ms. Magee lives are "populated overwhelmingly by residents who are African-American or Latino and not Caucasian." (Pls' Compl. ¶¶ 18-19.) Plaintiffs claim this "concentration" is far out of proportion to population demographics for the City of South Bend or St. Joseph County and that it is the result of Defendants' "intentional actions or deliberate indifference." (Pls' Compl. ¶¶ 20-21.)

### III.    Causes Of Action Against Defendants

Plaintiffs allege fifteen claims total, and thirteen claims against Defendants.[4] Specifically, Plaintiffs claim Defendants violated: (1) the Fair Housing Act (FHA) by discriminating against Plaintiffs based on their race and handicap; (2) Section 504 of the Rehabilitation Act of 1973 by discriminating against Plaintiffs on the basis of disability; (3) Title II of the Americans with Disabilities Act (ADA) by discriminating against Plaintiffs on the basis of disability; (4) Title III of the ADA by discriminating against Plaintiffs on the basis of disability, presumably by failing to provide a public accommodation; (5) 42 U.S.C. § 1981 by "act[ing] against Plaintiffs in regard to the Plaintiffs' right to own and possess housing because of the Plaintiffs' race and color;" (6) 42 U.S.C. § 1982 presumably based on the same facts alleged to support her Section 1981 claim; (7) Plaintiffs' due process and equal protection under the Fourteenth Amendment to the U.S. Constitution as applied by 42 U.S.C. § 1983; (8) the United States Housing Act (USHA) "by failing to provide housing and services required by the [USHA];" (9) Article I of the Indiana Constitution by failing "to provide Plaintiffs with due course of law;" (10) Indiana law by entering into a lease with Plaintiff Magee that "is unconscionable and illegal" or administered "in an unconscionable and illegal manner;" (11)

---

[4] Plaintiffs' Fourteenth Claim is against Mayor Stephen J. Luecke, and their Fifteenth Claim is against Shaun Donovan, the Secretary of HUD.

Indiana and municipal law by failing to provide Plaintiffs with a habitable premises; (12) Indiana and federal law by breaching "contracts of which the Plaintiffs are intended third-party beneficiaries;" and (13) Title VI of the Civil Rights Act by discriminating against Plaintiffs on the basis of their race.  (Pls' Compl. ¶¶ 24-35.)

## ARGUMENT

## IV.   PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE REDUNDANT

Plaintiffs do not specify whether the individual defendants have been sued in their individual capacities, in their official capacities, or both.  However, "[u]nless a plaintiff expressly indicates that a defendant is being sued as an individual, courts should construe an allegation that a defendant was acting under color of state law as a suit against that defendant in his official capacity only."  *Herring v. Chicago Housing Authority*, 850 F.Supp. 694, 703-04 (N.D. Ill. 1994) (*citing Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990).)  Plaintiffs' Complaint refers to Marva Leonard-Dent only as "Executive Director of HASB" noting that in this position she "has responsibility for operation of HASB activities, services, and properties. (Pls' Compl. ¶ 5.)  Similarly, Plaintiffs refer to the Commissioners in their official capacities as "Commissioners of HASB" who "are members of the HASB Board Commissioners".  (Pls' Compl. ¶ 7.)  Plaintiffs describe the Board as "exercising control over HASB and appoints and supervises the HASB Executive Director."  (Pls' Compl. ¶ 6.)  Thus, the individual Defendants are sued only in their official capacities.  *See Herring*, 850 F.Supp. at 703-04.

Plaintiffs' claims against the individual Defendants in their official capacities are really just claims against the Housing Authority.  *Id.*; *Kentucky v. Graham*, 473 U.S. 159, 166, 170 (1985).  Because the official capacity claims are "redundant" of the claims asserted against the Housing Authority, the claims against the individual Defendants should be dismissed.  *Comer v.*

*Housing Authority of the City of Gary, Ind.*, 2009 WL 1299576, *4 (N.D. Ind. 2009); *Flores v. Vill. of Bensenville*, 2003 WL 1607795 (N.D. Ill. 2003) (*citing Kentucky*, 473 U.S. at 166).

## V.   THE BOARD OF COMMISSIONERS OF HASB IS NOT A SUABLE ENTITY

Plaintiffs have named the "Board of Commissioners of HASB" as a Defendant in their lawsuit, yet the Board is not a separate entity that may sue or be sued.  (Pls' Compl. ¶ 6.)  To have the capacity to sue or be sued, Indiana law must specifically provide for it.  Fed. Rule Civ. Proc. 17(b)(3).  Indiana law specifically provides for the creation of housing authorities and further provides that a housing authority may "sue or be sued."  Ind. Code § 36-7-18-15.  There is no corollary law regarding the Housing Authority's Board of Commissioners.  Because Indiana law does not provide that the Board of Commissioners has the capacity to sue or be sued, the Board of Commissioners should be dismissed as a Defendant in Plaintiffs' lawsuit.

## VI.   PLAINTIFFS' CLAIMS DO NOT MEET PLEADING STANDARDS

### A.   Pleading Standards

Plaintiffs assert thirteen claims against the Housing Authority, Ms. Leonard-Dent, the Board of Commissioners and the Commissioners.  Every one of these claims is insufficiently pled because each of Plaintiffs' claims is pled in conclusory terms and at best is a "formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jones v. South Bend Housing Authority*, 2009 WL 1657466 (N.D. Ind. June 10, 2009) (applying *Twombly* to a housing discrimination case); *Brenston v. Wal-Mart*, 2009 WL 1606935 (N.D. Ind. June 8, 2009) (applying *Twombly* to an employment discrimination case).  To survive a motion to dismiss based on the sufficiency of the complaint in the Seventh Circuit, the complainant must clear two hurdles.  *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Id.* (quotation

marks and ellipses omitted).  "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id.* (quotation marks omitted).

None of Plaintiffs' claims clear these hurdles.  Not one of the fifteen claims describes which (if any) of the factual allegations it relies on for support, leaving Defendants to speculate about what the basis of Plaintiffs' claims is.  Moreover, even if the Court were to apply all of the facts Plaintiffs have alleged to each of their claims, Plaintiffs have not alleged facts sufficient to form a basis for relief.  To illustrate, Plaintiffs assert multiple claims for race discrimination and disability discrimination, yet none of the "facts" in Plaintiffs' Complaint allege that Defendants engaged activities because of Plaintiffs' race and/or disability.  *See Brenston*, 2009 WL 1606935, *4 (granting the defendant's motion to dismiss the ADA claim in part because the plaintiff failed to allege that the defendant's conduct occurred on the basis of the plaintiff's disability.)  As further illustration, Plaintiffs conclusively state that "[a]s a direct and proximate result of the acts alleged, Ms. Magee and Ms. Finneran have suffered, continue to suffer, and will suffer injuries for which they are entitled to compensation" and "for which they are entitled to equitable relief...."  (*See* Pls' Compl. ¶¶ 24, 25.)  These formulaic allegations merely state an element of Plaintiffs' claims (i.e. injury entitling Plaintiffs to relief), but do not describe what the injury or injuries are, or which actions caused the injury.  This rote repetition of an element of Plaintiffs' claims is insufficient to put Defendants on fair notice of the nature of the claims or to state a plausible basis for recovery.  *See Twombly*, 550 U.S. at 544, n.3.  The following Sections address Plaintiffs' pleading failures for each claim.

## VII.    PLAINTIFF'S SEGREGATION CLAIM FAILS

Plaintiffs claim that "[t]he HASB building in which Ms. Magee resides, and the HASB complex in which the building is located are both populated overwhelmingly by residents who are African American and not Caucasian."  (Pls' Compl. ¶ 18.)  The same allegation is made

regarding the neighborhood surrounding the location of Ms. Magee's building.  (Pls' Compl. ¶ 19.)  Plaintiffs further claim that "the concentration of non-Caucasian residents described in the preceding two paragraphs is far out of proportion to the corresponding population demographics for the City of South Bend or the County of St. Joseph, IN" and that this "concentration" "occurred and remained because of the actions and acquiescence of Defendants or their predecessors in office."  (Pls' Compl. ¶¶ 20-21.)

Plaintiffs fail to identify which of the thirteen claims against Defendants are associated with these segregation-type allegations.  Given the inherent racial nature of the segregation allegations, however, six of Plaintiffs' claims could presumably be tied to her segregation allegations.  Specifically, her claims based on Title VI (Section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d), Section 1981, Section 1982, the FHA and equal protection rights under the U.S. and Indiana Constitutions (as applied through Section 1983).  But, these claims fail because Plaintiffs lack standing to assert these claims, and the statute of limitations for these claims has expired.

### A.  Ms. Finneran Lacks Standing Because She Is Not A Tenant Of The Allegedly Segregated Building, Complex Or Neighborhood

All of Ms. Finneran's segregation claims should be dismissed because she is not, nor does she allege she is, a tenant in property owned by the Housing Authority.  Plaintiffs' segregation allegations relate solely to Ms. Magee's building, complex and neighborhood.  (Pls' Compl. ¶¶ 18-21.)  Because Ms. Finneran has not pled sufficient facts to demonstrate that she has standing to assert segregation-based claims against Defendants, Ms. Finneran should be dismissed as a Plaintiff on all segregation claims.  *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (describing elements of standing).

**B.      Ms. Magee and Ms. Finneran Lack Standing To Assert Sections 1981, 1982 and Title VI claims**

Ms. Magee (as a resident rather than an applicant for housing at 628 Western) and Ms. Finneran (as neither a resident nor an applicant for housing at 628 Western) lack standing to assert claims under Sections 1981, 1982, 1983 and Title VI because they have been harmed only indirectly by the alleged segregation and such claims violate principles of "prudential limitations".  *See Warth v. Seldin*, 422 U.S. 490 (1975) (denying standing to residents who challenged town's exclusionary policies as depriving them of the right to live in a racially integrated community); *see also U.S. General v. City of Joliet*, 432 F.Supp. 346 (D.C. Ill. 1977) (applying the holding of *Warth v. Seldin*).[5]  Prudential limitations prevent those who have been "harmed indirectly by the exclusion of others" from having standing.  *See id.*  Plaintiffs do not claim they are applicants for housing, but instead apparently seek relief because of the alleged harm they indirectly suffered as a resident of the alleged "segregated" development (Ms. Magee) or as an unrelated third-party (Ms. Finneran).  Such indirect harm is not actionable under Section 1981, Section 1982 or Title VI, and therefore Defendants request that these claims be dismissed.

**C.      Plaintiffs' Segregation-Based Claims Are Barred By The Statute Of Limitations**

Plaintiffs' segregation claims challenge and seek redress for a 48-year-old decision to locate a development at 628 Western Avenue.  (*See* Affidavit of Cornelius Lottie attached hereto as Exhibit A.)  The statute of limitations for Plaintiffs' FHA claim is two years.  42 U.S.C. § 3613(a)(1)(A).  Similarly, the statute of limitations for Plaintiffs' Section 1982, Section 1983 and

---

[5] Note, these prudential limitations prohibiting third party standing do not apply to the FHA, and therefore, Plaintiffs could challenge any allegedly discriminatory practices of the Housing Authority solely on the basis of their status as residents.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376-77 (1982) (holding that residents of a neighborhood had standing to challenge steering practices because they had been damaged by being denied the benefits of interracial association).  However, this claim would still have to be properly pled, which the current Complaint fails to do.  Moreover, as we explained in Section V.B. of this brief, a segregation claim under the FHA based on the location of the development (not steering) is a post-acquisition claim of discrimination, and the Seventh Circuit does not allow such claims.

Title VI claims is also two years.  *See Morse v. Univ. of Vermont*, 973 F.2d 122 (2nd Cir. 1992) (holding that Section 1982 and Title VI claims are generally governed by the statute of limitations applicable to state personal injury actions); *Miles v. Trempealeau County,* 204 Fed.Appx. 570 (7th  2006) (same for Section 1983 claims); Ind. Code § 34-11-2-4 (setting forth a two-year statute of limitations for personal injury actions in Indiana).[6]   The statute of limitations for a Section 1981 claim is four years.  *See In Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).  The limitations period has long passed for Plaintiffs to assert segregation claims, and the continuing violations doctrine is inapplicable.

The continuing violation doctrine is applicable when a plaintiff "challenges not just one incident of conduct violative of the [Fair Housing] Act, but an unlawful practice that continues into the limitations period."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).  But, Plaintiffs' specific challenge makes no mention of a continuing practice or repeated violation, but rather relates only to the location of the property.  (*See* Pls' Compl. ¶¶ 18-19 (challenging the building, complex and neighborhood "in which the building is located"); *see Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (stressing the "need to identify with care the specific [discriminatory] practice that is at issue.")

Plaintiffs' challenge is akin that brought by the plaintiffs in *Jersey Heights Neighborhood Assoc. v. Glendening*, 174 F.3d 180 (4th Cir. 1999).  In that case, the plaintiffs challenged the site selection for a highway, arguing under Section 1983 that the decision violated the Equal Protection Clause and Title VI.  The plaintiffs attempted to circumvent the statute of limitations by arguing that the highway project as a whole constituted a continuing violation.  *Id.* at 189.  The court rejected this argument stating "[a]t bottom, [the plaintiffs'] continuing violation

---

[6] Plaintiffs' state and federal constitutional claims hinge on the success of Plaintiffs' other claims, and therefore, because the FHA, Section 1981 and Section 1982 claims are barred by the statute of limitations, Plaintiffs'

argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights." *Id.* Further, the court noted that subsequent refusals to reconsider the location did not "revive" the limitations period for the original decision. *Id*; *see also Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (holding that the continuing violation theory did not apply to an alleged "failure to design and construct" a multifamily dwelling according to FHA standards because "current effects alone cannot breathe life into prior, unchanged discrimination; … such effects in themselves have 'no present legal consequences.'" *Id.* at 463 (cites omitted); *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 508-09 (E.D. Va. 2002) ("the continuing violations provision does not apply in the construction context if the harm alleged is the ongoing effect of a violation that occurred outside the statute of limitations"); *Link v. Village of Wadsworth*, 1996 WL 197513 (N.D. Ill. 1996) (holding plaintiff's Section 1983 claim based on denial of request for a zoning variance was a discrete act, not a continuing violation).

Here, Plaintiffs challenge the location of the housing development. The decision to locate the development at 628 Western Avenue was a decision made once, in 1961. Just like the challenged practice in *Jersey Heights* and *Garcia*, Plaintiffs' challenge to the location of the Western Avenue development is a challenge to a single instance of allegedly unlawful conduct, not a continuing violation. *See Garcia*, 526 F.3d at 463. Plaintiffs' segregation-related claims are barred by the statute of limitations and therefore should be dismissed.

## VIII. PLAINTIFFS' FHA RACE AND DISABILITY DISCRIMINATION CLAIMS FAIL

Plaintiffs' FHA claims fail because they are inadequately plead and because post-acquisition claims of discrimination are not actionable under the FHA.

### A.   Plaintiffs' FHA Claims Are Inadequately Plead

---

constitutional claims based on alleged unlawful segregation also fail.

In support of their FHA claims, Plaintiffs allege Defendants "have discriminated against Plaintiffs on the basis of (a) race [African American] and (b) handicap."  (Pls' Compl. ¶ 24.)  Further, Ms. Finneran alleges she has been discriminated against because of her association with Ms. Magee, a disabled individual.  (*See* Pls' Compl. ¶ 24.)  Notably, Plaintiffs do not tie any of the allegations in the Complaint to this claim nor do they otherwise explain how Defendants allegedly discriminated against them.   Given Plaintiffs provide no factual allegations of discrimination (e.g., discriminatory statements or differential treatment), this claim should be dismissed.  *See Brenston*, 2009 WL 1606935, *4 (granting motion to dismiss ADA claims because the plaintiff failed to "articulate some factual allegations that made his claim for relief plausible.")

### B.      Post-Acquisition Claims Of Discrimination Are Not Actionable

Even if Plaintiffs properly pled their FHA claims, those claims are subject to dismissal because they are post-acquisition claims of discrimination–that is, discrimination during tenancy. Plaintiff Magee acknowledges that she was a tenant in a Housing Authority development at all relevant times.  (*See* Pls' Compl. ¶ 3(a).)  Further, neither Plaintiff Magee nor Plaintiff Finneran claim that their "joint" application for Section 8 vouchers was denied, and therefore, they have not alleged discriminatory denial of a Section 8 voucher.  (*See* Pls' Compl. ¶ 17.)  The Seventh Circuit has specifically provided that post-acquisition claims of discrimination are not actionable under the FHA.  *See Halprin v. The Prairie Single Family Homes of Dearborn Park Assoc.*, 388 F.3d 327, 329 (7th Cir. 2004) (granting motion to dismiss and holding that plaintiffs who had acquired property and were allegedly subsequently harassed on the basis of their religion could not state a claim under Section 3604 because they were not denied access to property); *see also Jones v. South Bend Housing Authority*, 2009 WL 1657466 (N.D. Ind. 2009).  Plaintiffs have not

pled FHA claims relating to "access" to housing and therefore the FHA claims should be dismissed.

## IX.   PLAINTIFFS' DISABILITY DISCRIMINATION CLAIMS UNDER THE REHABILITATION ACT AND THE ADA FAIL

### A.   Plaintiffs' Rehabilitation Act, ADA Title II And ADA Title III Are Inadequately Pled

Plaintiffs' Complaint alleges Defendants violated the Rehabilitation Act, Title II of the ADA and Title III of the ADA "in that they have discriminated against Plaintiffs on the basis of disability.  Plaintiffs are otherwise qualified individuals with a disability as defined by the Act[s].  Ms. Finneran suffered discrimination because of her association with Ms. Magee, who is an otherwise qualified individual with a disability."  (Pls' Compl. ¶¶ 25-27.)  Again, none of these claims are tied to any specific allegations in the Complaint, leaving Defendants to speculate what actions or allegations were discriminatory based on disability, and fail to meet the plausibility pleading standard established in *Twombly* and its progeny.  *See Concentra*, 496 F.3d at 776; *see also Brenston*, 2009 WL 1606935, *4 (granting motion to dismiss ADA claims because the plaintiff failed to "articulate some factual allegations that made his claim for relief plausible.")

### B.   Plaintiffs' Title III Claim Has No Basis

Title III of the ADA prohibits discrimination in public accommodations provided by private entities.  42 U.S.C. §§ 12181-12189; *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999).  While Plaintiffs' Complaint cursorily states that "Defendant HASB is a 'public accommodation' under Title III", this is not true.  (*See* Pls' Compl. ¶ 27.)  In fact, the Housing Authority is a "municipal corporation" by definition (and as acknowledged in Plaintiffs' Complaint, ¶ 4), and therefore cannot be a private entity.  *See* Ind. Code § 36-7-18-14 ("A housing authority is a municipal corporation and has all the powers necessary or convenient for carrying out the purposes of this chapter."); 42 U.S.C. § 12181(6) (defining private entity as any

entity that is not a public entity).  Further, "public accommodation" is specifically defined by Congress, and while it includes "place of lodging", it does not encompass permanent residences. *See* 42 U.S.C. § 12181(7).  Plaintiffs' Complaint is noticeably void of any reference to an area that could conceivably be a "public accommodation" and therefore, Plaintiffs' Title III claim should be dismissed.

## X.      PLAINTIFFS' SECTION 1981 CLAIM FAILS

Section 1981 prohibits race discrimination in the making and enforcing of contracts. *Morris v. Office Max*, 89 F.3d 411, 414 (7th Cir. 1996).  In their Complaint, Plaintiffs claim Defendants have denied them "equal rights" under Section 1981 and have "acted against Plaintiffs in regard to the Plaintiffs' right to own and possess housing because of the Plaintiffs' race and color."  (*See* Pls' Compl. ¶ 28.)  The Complaint does not explain how Plaintiffs were "denied" rights or how Defendants "acted against" them.  The only allegation in the Complaint that pertains to race has to do with unlawful segregation, and it unclear from the Complaint whether these allegations are intended to support Plaintiffs' Section 1981 claim.[7]

Should Plaintiffs in fact be relying on the segregation-type allegations to support their Section 1981 claim, such a claim is invalid (as described above).  Moreover, Section 1981 protects individuals' right to make and enforce contracts (and includes the right to enjoy the privileges of existing leases).  Historically, Section 1981 has been used by prospective buyers or tenants who are being or have been "steered" toward specific housing areas because of their race. *See e.g. Moore v. Townsend*, 525 F.2d 482 (7th Cir. 1975).  Here, Plaintiffs do not allege that they have been unlawfully steered to their unit because of their race, but rather that their rights to

---

[7] Plaintiffs do make other allegations in the Complaint, including that Plaintiff Magee complained about the condition of her unit but the complaints were unanswered. *See* Compl. ¶¶ 14-16.  Plaintiffs further allege that Defendants acted improperly regarding Ms. Magee's application for Section 8 vouchers. *See* Compl. ¶ 17. Plaintiffs do not allege, however, that either of these or other actions/inactions occurred because Plaintiffs are African American and therefore they have no apparently connection to Plaintiffs' Section 1981 claim.

"own and possess housing" have been interfered with in violation of Section 1981. (*See* Pls'
Compl. ¶ 28.)   Further, while Plaintiffs allege they have been retaliated against and that this
"retaliation has taken the form of refusal to provide services to Ms. Finneran in connection with
an application for Section 8 vouchers jointly by Ms. Magee and Ms. Fineran," it is unclear how
this "retaliation" claim possibly fits within Plaintiffs' Section 1981 right to contract claim. (Pls'
Compl. ¶ 17.)   Plaintiffs' Section 1981 claim is improperly pled and does not demonstrate
Plaintiffs are entitled to relief.

## XI.   PLAINTIFFS' SECTION 1982 CLAIM FAILS

Section 1982 states, "[a]ll citizens of the United States shall have the same right, in every
State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold,
and convey real and personal property." 42 U.S.C. § 1982.   The U.S. Supreme Court has
described that Section 1982 is concerned with "the right of black persons to hold and acquire
property on an equal basis with white persons and [to provide for] the right of blacks not to have
property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122
(1981).[8]   "[T]he threshold inquiry under Section 1982 must focus on the relationship between the
[allegedly wrongful activity] and the property interest of the [complaining parties]." *Southend
Neighborhood Improvement v. County of St. Clair*, 743 F.2d 1207, 1211 (7th Cir. 1984) (citation
omitted).   The Seventh Circuit has held that the connection between the defendant's actions (or
inactions) and the alleged injury must not be "too remote to support a claim of discrimination."
*See id.*

If Plaintiffs' Section 1982 claim is based on the alleged racial segregation, it lacks merit
(as described above).   Moreover, any segregation claim under Section 1982 would fail because

---

[8] Section 1982 claims are substantially similar to Section 1981 claims, with two main differences.  First,
Section 1982 covers not only housing rights, but also other property rights.  Second, Section 1982 does not rely on
rights from a contract, but rather rights to "hold" or "lease" property.

there is essentially no allegation stating what type of injury the alleged segregation caused.  To the extent Plaintiffs are relying on other allegations in the Complaint to support their Section 1982 claim (despite the fact that Plaintiffs' do not allege these actions/events occurred because of Plaintiffs' race), it is similarly unclear what the Housing Authority did wrong or how those actions/inactions injured Plaintiffs' property rights.  Plaintiffs do not allege they were evicted, that they were denied Section 8 vouchers or that Defendants otherwise interfered with their property interests.  *See Southend*, 743 F.2d at 1212 (holding the allegations failed because they did not include "more than a minimal effect on their rights, and those injuries [did] not rise to the level necessary to constitute a statutory violation.")   Further, while the Seventh Circuit noted that a Section 1982 claim may be based on discriminatory refusal to extend services, no such allegations are contained in Plaintiffs' Complaint. *Id.*  As a result, Plaintiffs' Section 1982 claim should be dismissed.

## XII.   PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS FAIL

Plaintiffs claim "Defendants violated Plaintiffs' right to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States…. These violations under sec. 1983 arise, in part because Defendants, acting under color of law, have violated the legal provisions in the preceding and following claims."  (*See* Pls' Compl. ¶ 30.)   Again, Plaintiffs' Complaint gives Defendants no notice of what the basis of Plaintiffs' claim are or how Plaintiffs are entitled to relief.  Further, the claim seems to rely entirely on the success of other claims.  While the flaws of Plaintiffs' other claims necessarily doom their federal constitutional challenges, these challenges also fail for the following, independent reasons.

### A.      Due Process

Plaintiffs do not specify whether they intend this claim to be substantive or procedural in nature.  Generally, due process claims are used in the housing context to challenge an eviction or

other action as an unconstitutional violation of his or her property right.  In the present case, Plaintiffs do not specify what action(s) Defendants took to violation this right.  Ms. Finneran is not a public housing tenant, and does not claim her application for Section 8 was denied.  Ms. Magee, while a tenant, does not allege she was evicted, and was not denied a Section 8 voucher.  Without more, Defendants can only speculate as to what the basis of the due process challenge is.

### B.      Equal Protection

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."  *Washington v. Davis*, 426 U.S. 228, 239 (1976).  Defendants must have had a discriminatory purpose, and that purpose was the motivating factor in its decisions.  *Arlington Heights v. Metropolitan Life Ins. Co.*, 429 U.S. 252 (1977).  Plaintiffs' must prove the discrimination was intentional.  *United States v. Board of Educ.*, 11 F.3d 668 (7th Cir. 1993).

From the allegations in the Complaint, it is unclear how Plaintiffs claim they have been denied equal protection because of their race.  Absent clarification, Defendants can only assume that Plaintiffs' claim is based on the only race-related allegations in the Complaint – segregation.  Plaintiffs' claim the unlawful "concentration" of residents who are not Caucasian is the result of Defendants "intentional acts or deliberate indifference".  (Pls' Compl. ¶ 21.)  As described above in Section IV, however, all of Plaintiffs' segregation claims are fatally flawed.  Therefore, Plaintiffs' equal protection claim should be dismissed.

## XIII.  PLAINTIFFS' U.S. HOUSING ACT CLAIM FAILS

Plaintiffs claim that Defendants have "failed to provide Plaintiffs with housing and services required by the [United States Housing Act] to Plaintiffs as required by the Act."  (*See* Pls' Compl. ¶ 31.)  This cursory statement is insufficient to survive a motion to dismiss because

it is "merely a policy statement and does not provide a private right of action." *Fincher v. South Bend Housing Authority*, 612 F.Supp.2d 1009 (N.D. Ind. 2009) (granting summary judgment because Plaintiff's complaint merely alleged the Housing Authority violation the Housing Act, rather than citing a specific right to create a private right of action); *see also Thomas v. Chicago Housing Authority*, 919 F.Supp. 1159, 1164 (N.D. Ill. 1986); *see also Hale v. Chicago Housing Authority*, 642 F.Supp. 1107, 1109 (N.D. Ill. 1986).

Because Plaintiffs have failed to assert specific rights under the Housing Act that have been violated, Defendants' motion to dismiss this claim should be granted.

## XIV.   PLAINTIFFS' STATE DUE COURSE OF LAW CLAIM FAILS

Plaintiffs allege that "Defendants have failed to provide Plaintiffs with due course of law as guaranteed to Plaintiffs by the Constitution of the State of Indiana, Article I, sec. 23." (*See* Pls' Compl. ¶ 32.)  Plaintiffs' due course of law allegation is analogous to their federal due process claim and fails for the same reasons. *See Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185, 1188 (Ind. Ct. App. 2001) (Indiana courts "have adopted federal due process analysis for Indiana Due Court of Law questions in civil proceedings").)  Similar to their federal due process challenge, Plaintiffs' claim is improperly pled and gives Defendants no information about the basis of their claim or that they are entitled to relief.  Therefore, this claim should be dismissed.

## XV.   PLAINTIFFS' CONTRACT CLAIM FAILS

Plaintiffs claim "the lease that Defendants contracted with Plaintiffs is unconscionable and illegal and, additionally and alternatively has been, is being, and will be administered by Plaintiffs in an unconscionable and illegal manner."[9]  (*See* Pls' Compl. ¶ 33.)  First, it is clear that Plaintiff Finneran should be dismissed as a Plaintiff with regard to this and other claims

---

[9] Presumably, Plaintiffs intended to argue that the lease "will be administered" by Defendants, not "by Plaintiffs in an unconscionable and illegal manner."  (*See* Compl. ¶ 33.)

relating to a "lease" with the Housing Authority.  Plaintiff Finneran does not allege she is a tenant with the Housing Authority and therefore has no "lease" that could support her contract claim.

The second major flaw in Plaintiffs' contract claim, as with all of Plaintiffs' claims, is inadequate pleading.  Plaintiffs do not state how the lease is illegal, what action(s) the Housing Authority has taken to breach the lease, or what provision of the lease has been violated. Further, to the extent Plaintiffs claim the lease is unconscionable, they have not alleged any facts that could possibly support a finding that "no sensible man not under delusion, duress or in distress would make [the lease], and such as no honest and fair man would accept," which would be require to establish such a claim.  *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind.Ct.App.1989).  As a result, Plaintiffs' state law contract claim should be dismissed.

## XVI.  PLAINTIFFS' FAILURE TO PROVIDE HABITABLE PREMISES CLAIM FAILS

Plaintiffs claim that under Indiana and municipal law, "the Defendants failed to provide Plaintiffs with habitable premises to which Plaintiffs were entitled."  (*See* Pls' Compl. ¶ 34.)  No state or local law is identified.  Further, Plaintiff Finneran, again, is clearly not a proper Plaintiff to this claim, as she is not a tenant of Housing Authority property, and therefore the Housing Authority has no obligation to provide her with habitable premises.  Defendants request that Ms. Finneran be dismissed as a Plaintiff to this claim and all others founded on tenancy with the Housing Authority.

Defendants can only assume that Plaintiffs intend to bring this claim under Indiana Code Section 32-31-8-5, which sets forth landlord obligations under rental agreements.  In relevant part, this code section requires that a landlord maintain electrical, plumbing, heating and cooling

and other systems and items in "good and safe working condition."  I.C. 32-31-8-5(4).  However, while the Complaint alleges that Ms. Magee's apartment and building did not meet standards and that she complained about this to no avail, Ms. Magee does not state what the problems were, when she complained or whether she waited a reasonable time to allow Defendants to repair the problem.  I.C. 32-31-8-6 (describing that a private right of action can be brought to ensure a landlord's compliance with statutory obligations, but not before the tenant gives notice of the problems and waits a reasonable time for the problem to be repaired.)  Without more, Plaintiffs have made no "showing" of entitlement to relief and this claim should be dismissed.  *Twombly*, 550 U.S. at 555.

## XVII.  PLAINTIFFS' THIRD PARTY BENEFICIARY CLAIM FAILS

Plaintiffs claim that the Defendants "have breached contracts of which the Plaintiffs are intended third-party beneficiaries."  (*See* Pls' Compl. ¶ 35.)  Notably, Plaintiff Finneran does not allege she is a tenant of public housing or that there is any type of contract of which she (as not affiliated with the Housing Authority in any way) could possibly be a third party beneficiary.  As a result, Ms. Finneran should be dismissed as a Plaintiff to this claim.

Further, Plaintiffs make no mention of any contract in the Complaint, aside from Plaintiffs' lease.  This failure dooms the third party beneficiary claim, as Defendants are left only to speculate what contract and what provision of that contract was allegedly breached.  *Fincher*, 612 F.Supp.2d at 1023 (holding the plaintiff's failure to identify a contract was a "glaring flaw" that entitled the Housing Authority to summary judgment on the third party beneficiary claim).  As a result, Plaintiffs' third party beneficiary claim should be denied.

## XVIII. PLAINTIFFS' TITLE VI RACE DISCRIMINATION CLAIM FAILS

Plaintiffs allege that "Defendants have violated the rights of Plaintiffs to be free of discrimination on the basis of race or color by recipients of federal financial assistance, as

guaranteed by Title VI…and implementing rules." (*See* Pls' Compl. ¶ 38.)  Plaintiffs do not cite a specific "implementing rule[]" nor do they tie this claim to any specific allegations in the Complaint.  Generally, Title VI of the Civil Rights Act of 1964 prohibits recipients of federal funds from discriminating based on race, color or national origin.  42 U.S.C. § 2000d.  The legislature does not define the term discrimination, though courts have interpreted it basically to mean a violation of equal protection. *Laufman v. Oakley Building & Loan, Co.*, 408 F.Supp. 489, 498-501 (S.D. Ohio 1976) (noting that the term discrimination used in Title VI refers to a denial of equal protection, and holding that a denial of federal assistance to loan application because of the racial composition of the neighborhood would constitute discrimination); *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1184-87 (11th Cir. 1983) (analyzing Title VI claim for discriminatory municipal services).

As pled, the only allegations in Plaintiffs' Complaint that have any possible tie to race discrimination are the segregation-type allegations wherein Plaintiffs claim that Plaintiff Magee's building, the complex in which it is located, and the surrounding neighborhood is "populated overwhelmingly by residents who are African-American and not Caucasian" and that this concentration exists because of the "intentional actions or deliberate indifference of Defendants or their predecessors in office."  (*See* Pls' Compl. ¶¶ 18-21.)  Not only are these allegations overly vague and conclusive, Plaintiffs do not have standing to assert this claim, and further, it is barred by the statute of limitations.  (*See infra* Section IV.)

## CONCLUSION

Plaintiffs' have improperly named Ms. Leonard-Dent, the Commissioners and the Board as Defendants.  Further, they have failed to meet pleading standards, leaving Defendants with no notice of the basis for their claims.  As a result, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Respectfully submitted,

/s/ Michael P. Palmer
Michael P. Palmer (25199-71)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana 46601
Telephone:  (574) 233-1135
Email: Michael.Palmer@btlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Brief in
Support of Defendant Housing Authority's, Marva Leonard-Dent's and the Commissioners'
Motion to Dismiss** was filed and served upon the following, on this 2nd day of October, 2009,
via ECF:

Kent Hull
INDIANA LEGAL SERVICES, INC.
401 E. Colfax
Suite 116
Commerce Center
South Bend, IN 46617

Aladean M. DeRose
227 W. Jefferson Blvd., Suite 1900
South Bend, IN 46601

/s/ Michael P. Palmer